UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| THE WHEEL-SOURCE, INC., | § § | |
| Plaintiff, | § § | |
| v. | § § | Civil Action No. 3:12-cv-1500-M |
| ROBERT GULLEKSON, | § § | |
| Defendant. | § § § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss for Lack of Personal Jurisdiction and Alternatively, Improper Venue [Docket Entry #9], filed by Defendant Robert Gullekson ("Defendant" or "Gullekson"). Defendant argues that his contacts with Texas are insufficient to confer personal jurisdiction. In the alternative, Defendant requests this Court to dismiss or transfer this action because the Northern District of Texas is an improper venue. After reviewing the pleadings, briefing, and applicable law, the Court **GRANTS** Defendant's Motion to Dismiss for Lack of Personal Jurisdiction. Plaintiff's claims for misappropriation of trade secrets, conversion, breach of contract, tortious interference, and breach of fiduciary duty are **DISMISSED** without prejudice to re-filing in another jurisdiction.

    I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 4, 2012, The Wheel-Source, Inc. ("Plaintiff" or "Wheel-Source") filed this action against Defendant, its former employee, in the 382nd Judicial District Court of Rockwall County, Texas ("the state court action"). *Def.'s Notice of Removal* at 1. On May 15, 2012, Defendant removed the state court action to this Court, and subsequently moved to dismiss the

case for lack of personal jurisdiction and alternatively, improper venue. *Id.* In support of his Motion, Defendant submitted an affidavit, along with Plaintiff's state court pleading. In opposition to Defendant's Motion, Plaintiff submitted the affidavit of Jim Ricketts, the President of Wheel-Source, along with the deposition transcript of Defendant.

The following is a summary of the relevant jurisdictional facts in this case, as alleged or uncontroverted by Plaintiff. Plaintiff is a Texas-based corporation that sells steel wheels to wholesalers, distributors, and retailers, and that has contacts and business relationships with wheel manufacturers and factories in the United States and abroad. *Pl.'s Original Pet.* ¶ 9. Defendant is a citizen of Michigan, who worked for Plaintiff as a salesperson for approximately seven years. *Id.* at ¶ 12. In Michigan, in or about March 2005, Defendant received a phone call from Ricketts inquiring as to whether Defendant would be interested in working for Wheel-Source as a salesperson. *Def.'s Aff.* ¶ 10. In April 2005, Defendant visited Texas for three days.[1] *Ricketts's Aff.* ¶ 4. While there is some disagreement as to whether the parties' relationship was consummated during the Texas visit or shortly thereafter, there is no dispute that Defendant began working for Plaintiff at least thirty days after his visit to Texas, and received his first paycheck from Wheel-Source on May 11, 2005. *Ricketts's Aff.* ¶ 8. Plaintiff and Defendant never entered into a written employment agreement. *Def.'s Aff.* ¶ 11. During his approximately seven-year tenure with Plaintiff, Defendant worked out of his home office in Michigan, except for periodic travel as necessary for client meetings, and approximately five visits to the home office in Texas. *Id.* at ¶ 15. Plaintiff paid Defendant on a monthly basis, by sending checks

---

[1] The parties dispute what occurred during this visit. Plaintiff contends that at that time, it reached an agreement with Defendant for Defendant to work for Plaintiff as a salesperson. *See Ricketts's Aff.* ¶ 4. Defendant concedes that he visited Texas to discuss the possibility of working for Plaintiff, but contends the parties reached an agreement after, not during, the visit. *See Def.'s Aff.* ¶ 11. At this stage, the Court will resolve all factual differences in favor of Plaintiff and assume that the parties' employment relationship was consummated during Defendant's April 2005 visit to Texas.

drawn on a Texas bank to Defendant's home residence in Michigan, and also sent Defendant annual IRS Form 1099s as an independent contractor, not an employee. *Ricketts's Aff.* ¶ 6. Plaintiff never issued Defendant a Wheel-Source company email address. *Def.'s Dep. Test.* 20:16–18.

Plaintiff contends Defendant was authorized to act on its behalf, including making sales calls, communicating with customers about sales, and relaying information to assist with price quotes given to customers. *Ricketts's Aff.* ¶ 7. Plaintiff also maintains that it often sent trade secret and other confidential information to Defendant from Texas. *Id.* at ¶ 10. Working from his home office in Michigan, Defendant corresponded with Plaintiff via electronic mail and phone, sending to Plaintiff an estimated average of 10-15 work orders per month. *Id.* at ¶ 11. Plaintiff estimates that over the course of seven years, Plaintiff and Defendant exchanged hundreds of e-mail communications. *Id.* at ¶ 12. While Defendant worked for Plaintiff, he did not service any customers in Texas. *Id.* at ¶ 19. Plaintiff never made it a requirement that Defendant travel to Texas, but he made approximately five trips to Plaintiff's business office in Texas.[2] *Id.*

On April 19, 2012, Defendant informed Plaintiff that a competitor company had offered him a position. *Id.* at ¶ 13. The next day, Defendant resigned from Wheel-Source. *Id.* On April 23, 2012, Defendant joined Macpek, based in Quebec, as its Director of U.S. Sales. *Def.'s Dep. Test.* 17:7–17. Defendant's responsibilities included serving Macpek's existing customer base and generating new sales. After Defendant's resignation, Plaintiff claims it discovered that while he worked for Wheel-Source, Defendant had been wrongfully sharing Plaintiff's confidential

---

[2] During his deposition, Defendant testified that he made between none to ten visits to Texas between 2002 and 2012. *Def.'s Dep. Test.* 21:6–9. In his affidavit, Rickett stated his belief that Defendant came to Texas at least five times during the course of his relationship with Plaintiff. *Ricketts's Aff.* ¶ 19. The Court resolves this factual difference in favor of Plaintiff. *Luv N' Care, Ltd. v. Insta–Mix, Inc.* 438 F.3d 465, 469 (5th Cir. 2006).

information. *Ricketts's Aff.* ¶ 15. Plaintiff claims that Defendant supplied Blackburn, an Ohio company that is a Wheel-Source customer, with Wheel-Source's pricing, pricing strategies, and foreign manufacturer contact information. *Id.* Plaintiff also contends that Defendant wrongfully shared Wheel-Source's confidential information with Macpek. *Def.'s Dep. Test.* 16:16–19. Plaintiff asserts the following claims against Defendant: (1) misappropriation of trade secrets; (2) conversion; (3) breach of contract; (4) tortious interference; and (5) breach of fiduciary duty. *Def.'s Notice of Removal* at 1. In considering this Motion, the Court does not determine the ultimately viability of Plaintiff's causes of action.

## II.  STANDARD

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum is consistent with due process. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). The Texas long-arm statute reaches to the limits of due process, and, therefore, a court need only determine whether the exercise of personal jurisdiction over the moving defendant is consistent with due process. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991). The Due Process Clause of the Fourteenth Amendment to the United States Constitution permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state, and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001) (quoting *Alpine View Co. v. Atlas Copco A.B.*, 205 F.3d 208, 215 (5th Cir. 2000)).

When personal jurisdiction is challenged, and where as here, no evidentiary hearing occurs, the party seeking to invoke jurisdiction must make a prima facie showing of jurisdiction, with the court resolving all disputed facts in favor of jurisdiction. *Luv N' Care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). When determining whether the plaintiff has made a prima facie case, the court may consider any affidavits, interrogatories, deposition testimony, or any other recognized discovery method, but must disregard conclusory allegations. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1165 (5th Cir. 1985); *Panda Brandywine Corp.*, 253 F.3d at 869. Furthermore, "uncontroverted allegations in the plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of determining whether a prima facie case for personal jurisdiction exists." *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989) (citation and internal quotation marks omitted).

There are two categories of personal jurisdiction: general and specific. *See Mink v. AAAA Dev.*, 190 F.3d 333, 336 (5th Cir. 1999). General jurisdiction exists when a defendant's contacts with the forum state are "continuous and systematic," allowing the court to exercise jurisdiction over that defendant for causes of action unrelated to the defendant's connections to the state. *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). For specific jurisdiction to exist, the plaintiff's claims must arise out of or be related to his contacts with the forum state. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The plaintiff carries the burden to secure jurisdiction over the defendant with respect *to each cause of action asserted*. *BeautiControl, Inc. v. Burditt*, No. 3:01-cv-0744-M, 2001 WL 1149360, at *2 (N.D. Tex. Sept. 26, 2001). Consequently, the court must separately conduct a "minimum contacts" analysis for each cause of action asserted.

If a plaintiff makes a prima facie case that minimum contacts exist, the defendant has the burden of demonstrating that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 477 (1985); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 211 (5th Cir. 1999). To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a "compelling case" against it. *Burger King*, 471 U.S. at 477 (1985). The interests to balance in this determination are (1) the burden on the defendant having to litigate in the forum, (2) the forum state's interests in the lawsuit, (3) the plaintiff's interests in convenient and effective relief, (4) the judicial system's interest in efficient resolution of controversies, and (5) the state's shared interest in furthering fundamental social policies. *Ruston Gas Turbines, Inc. v. Donaldson Company, Inc.*, 9 F.3d 415, 421 (5th Cir. 1993).

### III.  ANALYSIS

The Court first considers whether Defendant's contacts with Texas are sufficient to confer general jurisdiction.

1. <u>General Jurisdiction</u>

General jurisdiction exists when a non-resident's contacts with the forum state are substantial, continuous, and systematic. *Helicopteros*, 466 U.S. at 414–19. The Fifth Circuit has reiterated that the "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 610 (5th Cir. 2008) (internal citations omitted). The standard to show general jurisdiction is high. *See, e.g.*, *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir.2003) (finding no general jurisdiction even though the defendant routinely arranged and received interline shipments to and from Texas and regularly sent sales people to Texas to

develop business, negotiate contracts, and service national accounts); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 373–76 (5th Cir. 1987) (holding that the sale of over $250 million of products to seventeen Texas customers over a five-year period did not constitute systematic and continuous contacts with Texas because delivery was accepted in Kansas).

Applying these principles to this case, it is clear that Defendant does not have sufficient systematic and continuous contacts with Texas to establish general jurisdiction. *See Helicopteros*, 466 U.S. at 414–19. Defendant's affidavit affirms that he has never lived in Texas, does not own any property in Texas, has never traveled to Texas for personal reasons, has never maintained a checking account at a bank in Texas, and has never worked for a Texas-based company other than Wheel-Source. *Def.'s Aff.* ¶¶ 3–7. While Defendant did work remotely for a Texas company, regularly communicated via phone and email with Wheel-Source, a Texas resident, and sent work orders to Texas, Defendant's contacts with Texas lack the substance or regularity to establish general jurisdiction over him. *See Helicopteros*, 466 U.S. at 417.

2. Specific Jurisdiction

The Court next considers whether Defendant's contacts with Texas are sufficient to confer specific jurisdiction. The focus of the specific jurisdiction analysis is on the relationship between Defendant, Texas, and the facts of this litigation, to determine whether Defendant's alleged liability *arises from* or is *related to* activity he conducted in Texas. *See id.* Plaintiff's claims against Defendant focus primarily on and arise from Defendant's alleged misappropriation of Plaintiff's trade secrets and confidential information for Defendant's own use and benefit. Because Plaintiff must establish the Court's jurisdiction with respect to each claim asserted, each claim is analyzed separately. *See BeautiControl*, 2001 WL 1149360 at *2.

A. <u>Misappropriation of Trade Secrets</u>

Plaintiff contends that Defendant misappropriated Wheel-Source's lists of current manufacturers and factories, and the names and related information of its prospective manufacturers. *Pl.'s Original Pet.* at ¶ 21. Plaintiff also claims that Defendant misappropriated Wheel-Source's information on its wheel dimensions, sizes, specifications, designs, blueprints, part numbers, manufacturing costs, pricing information, customer lists, and other confidential and trade secret information. *Id.*

Plaintiff asserts that on many occasions it shared its confidential and trade secret information with Defendant from Texas, but Plaintiff does not allege that it did so while Defendant was present in Texas, nor that Defendant ever disseminated Plaintiff's confidential information while in Texas, nor that Defendant disseminated information to Plaintiff's manufacturers or competitors operating in Texas. *Ricketts's Aff.* ¶ 10. The only alleged connections between Defendant's allegedly wrongful conduct and Texas are that Defendant allegedly received confidential and trade secret information sent from Texas, and that Defendant's conduct harmed or injured Plaintiff, a Texas-based company.

*Gustafson v. Provider HealthNet Servs., Inc.*, 118 S.W.3d 479 (Tex. App.—Dallas 2003, no pet.) is quite germane in light of its factual similarity to this case. In *Gustafson*, the appellate court rejected a Texas employer's assertion of specific jurisdiction over its employee, a citizen of Michigan. Plaintiff hired Gustafson to provide outsourcing services to a Michigan hospital. Plaintiff terminated Gustafson's employment and then sued him in Texas for breach of his confidentiality agreement, misappropriation of trade secrets and business information, and breach of fiduciary duties. Gustafson moved to dismiss for lack of personal jurisdiction. Plaintiff stressed the following to show the existence of Defendant's minimum contacts in Texas:

(1) the employment relationship itself, (2) Gustafson's two short visits to Texas, associated with his employment, (3) the fact that Gustafson's salary was paid from a Texas bank, (4) Gustafson's requests for reimbursement directed to plaintiff's Texas office and his cashing of reimbursement checks that were drawn on a Texas bank, (5) Gustafson's communications with others of Plaintiff's employees who were located in Texas, (6) the fact that Gustafson's health benefits were administered from plaintiff's Texas offices, (7) the fact that Gustafson's health insurance was through Blue Cross Blue Shield of Texas, and (8) the fact that insurance agents in Texas administered Gustafson's dental and life insurance. *Id.* at 483.

The *Gustafson* court noted that Gustafson's mere employment by a company with its principal place of business in Texas was not sufficient to establish the requisite minimum contacts with Texas. *Id.* at 483 (citing *Rittenmeyer v. Grauer*, 104 S.W.3d 725, 729 (Tex. App.—Dallas 2003, no pet.). *See also Burger King*, 471 U.S. at 478. The court also commented that "none of the contacts relied upon [we]re connected to Gustafson's execution of the confidentiality agreement, or his dissemination of confidential information, both of which occurred in Michigan," but rather "relate[d] only superficially to [Gustafson's] general employment relationship with [plaintiff]." *Gustafson*, 118 S.W.3d at 484. The court stressed that Gustafson never signed an employment agreement with plaintiff, worked in the same Michigan office as when he was employed by a previous employer, traveled to Texas twice for management meetings and that plaintiff did not assert that Gustafson breached any duties to it or committed any torts during these meetings, and Gustafson's direct supervisors were in Michigan. On these facts, the court determined that plaintiff had not met its burden to establish specific jurisdiction.

Likewise, in *Rushmore Investment Advisors, Inc. v. Frey*, the Pennsylvania employee of a

Texas company was sued in Texas for breach of an employment contract, misappropriation of trade secrets, and unfair competition. 231 S.W.3d 524 (Tex. App.—Dallas 2007, no pet.). The employer, Rushmore, contended that specific jurisdiction was proper over Frey, the former employee, because they had entered into a written employment agreement in Texas and the defendant was employed by the plaintiff for twenty-two months. Rushmore also contended that Frey represented to clients and federal agencies that she worked in Texas, made trips to Texas for work, maintained contact with clients in Texas, and that her employment agreement provided that Texas law would govern any disputes between the parties. *Id.* at 527. The court affirmed the trial court's dismissal for lack of personal jurisdiction, noting that "merely contracting with a Texas company does not necessarily constitute purposeful availment for jurisdictional purposes" and concluding "Frey's alleged liability did not arise from and was not related to activity conducted within Texas," but rather arose from her activities in Pennsylvania. *Id.* at 530.

As was true in *Gustafson*, Defendant's contacts with Texas relate only superficially to his general independent contractor relationship with Texas. The conduct that forms the basis of Plaintiff's Complaint appears to have occurred in Michigan where Defendant worked. Plaintiff's communications with Defendant through phone and email and from and to Texas do not establish a basis for concluding that Defendant engaged in purposeful jurisdictional conduct here. Without any allegations connecting Defendant's alleged tortious conduct to Texas, Plaintiff appears to rely on Defendant's contacts with Texas that are attenuated or fortuitous, as opposed to purposeful. The Court finds Plaintiff's allegations relating to Defendant's alleged misappropriation of trade secret information are insufficient to establish a prima facie case for jurisdiction over Defendant.

Conversion

Plaintiff also claims conversion, arguing that Defendant wrongfully exercised dominion over its confidential and trade secret information. This claim is premised on the same conduct allegedly establishing Defendant's misappropriation of Plaintiff's trade secrets. Plaintiff's allegations are insufficient to establish a prima facie case of personal jurisdiction for the same reasons.

3. Tortious Interference with Existing Contracts and Prospective Contractual Relations

Plaintiff contends that Defendant intentionally interfered with Plaintiff's existing and prospective contracts by sharing Plaintiff's confidential and trade secret information with its competitors. *Pl.'s Original Pet.* at 9. Plaintiff does not plead any contracts it lost as a result of Defendant's alleged wrongful conduct, all of which appears to have occurred in Michigan. While Ricketts's affidavit states only that Defendant "was working for and helping Blackburn," a company located in Ohio, Ricketts does not state that Wheel-Source lost Blackburn as a customer because of Defendant's conduct. *Ricketts's Aff.* ¶ 16; *See Def.'s Dep. Test.* 176: 13–14. Although it is foreseeable that Defendant's commission of this intentional tort could conceivably cause foreseeable harm to Defendant in Texas, foreseeable effects alone are insufficient to establish minimum contacts. *See Stelax Indus., Ltd. v. Donahue*, 3:03-cv-923-M, 2004 WL 733844, at *6 (N.D. Tex. Mar. 25, 2004) (Lynn, J.). Thus, Plaintiff has not established a prima facie case for specific jurisdiction for its tortious interference claim.

B. Breach of Contract

To determine whether personal jurisdiction exists in a breach of contract case, courts are directed to evaluate "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Stelax*, 2004 WL 733844 at *6

(internal quotations omitted).  The Fifth Circuit has stated unequivocally that "merely contracting with a resident of Texas is not enough to establish minimum contacts." *Moncrief Oil Intern. Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir. 2007).  Moreover, "a plaintiff's unilateral activities in Texas do not constitute minimum contacts where the defendant did not perform any of its obligations in Texas, the contract did not require performance in Texas, and the contract is centered outside of Texas." *Id.*

Plaintiff contends that it entered into a verbal agreement with Defendant in Texas for Defendant to devote his time and efforts to sell exclusively for Plaintiff.  *Pl.'s Original Pet.* at 8.  Plaintiff asserts that Defendant breached this contract when he divulged Plaintiff's confidential information, and, failed to devote all of his time and efforts solely for the benefit of Plaintiff.  Plaintiff contends that the injury resulting from Defendant's breach occurred in Texas.

Again, Plaintiff has not established a prima facie case for jurisdiction over Plaintiff's breach of contract claim.  The contract required performance in Michigan, not Texas.  The gravamen of Plaintiff's breach of contract claim is Defendant's alleged dissemination of confidential information, all of which occurred in Michigan or states other than Texas.  The connection of the contract to Texas rests on the mere fortuity that Wheel-Source is located in Texas.  *Moncrief*, 481 F.3d at 312 ("exchange of communications in the course of developing and carrying out a contract . . . does not, by itself, constitute the required purposeful availment . . . Otherwise, jurisdiction could be exercised based only on fortuity that one of the parties happens to reside in the forum state").  It is not reasonably foreseeable to Defendant that he would be called into a Texas court to defend a contract that was to be performed largely in Michigan, and only minimally, at best, in Texas.  *Moncrief*, 481 F.3d at 313.  Plaintiff has not established a prima facie case for jurisdiction for its breach of contract claim.

C. <u>Breach of Fiduciary Duty</u>

Plaintiff contends that Defendant owed Plaintiff fiduciary duties that included the duty of loyalty and good faith, the duty of candor, the duty to refrain from self-dealing, the duty to act with the highest integrity, the duty of fair and honest dealing, and the duty of full disclosure. *Pl.'s Original Pet.* at 7. For the purposes of this Motion, the Court assumes Defendant owed Plaintiff a fiduciary duty, even though Plaintiff treated Defendant as an independent contractor, not an employee, of Wheel-Source. Plaintiff contends that Defendant breached his duty of full disclosure when he failed to disclose in his phone calls and emails to Plaintiff that he was supplying Plaintiff's confidential information. Plaintiff argues that Defendant purposefully availed himself to Texas each time he made a telephone call to Texas or sent an email to a Wheel-Source employees in Texas without disclosing that he was helping Plaintiff's competitor.

The Fifth Circuit recognizes that in some circumstances, an out-of-state party's communications with a party in the forum state can provide a sufficient basis for specific personal jurisdiction in that forum. *See Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208 (5th Cir. 1999). In such cases, when the *actual content of communications* with a forum gives rise to a cause of action for an intentional tort, the communication alone can constitute purposeful availment. *See id.* In *Wien Air*, plaintiff, a Texas corporation, retained Brandt, a German lawyer, to aid plaintiff in its purchase of a German airline to expand into Eastern Europe. *Wien Air* at F.3d 208. Brandt largely remained in Germany, but had frequent communications with plaintiff. Brandt never disclosed to plaintiff that he had financial interests adverse to plaintiff's nor that he had undertaken representation of a third party whose interests were directly adverse plaintiff's. After the deal to purchase the German airline fell through, and plaintiff learned of Brandt's financial interest, plaintiff filed suit in Texas. In arguing that specific jurisdiction

existed, Wien Air provided a sworn affidavit from its employee detailing the telephone calls and other communications from Brandt to Wien Air in Texas "containing the promises, assurances and representations that are at the heart of this lawsuit." *Id.* at 212. In addition to the communications Brandt directed into Texas, Brandt also visited Texas at which time he allegedly gained confidential information he would later use against Wien Air. *Id.* at 214. During his Texas meeting, Brandt also allegedly made misrepresentations regarding his continuing legal representation of Wien Air. *Id.* The Fifth Circuit found specific jurisdiction existed with respect to plaintiff's claims for fraud, fraudulent inducement, breach of contract, and breach of fiduciary duty.

Unlike in *Wien Air*, the actual content of Defendant's communications with Texas did not give rise to the breach of fiduciary duty cause of action. Plaintiff's breach of fiduciary duty claim is based on Defendant's alleged sharing of Plaintiff's confidential information with Plaintiff's competitors without Plaintiff's prior permission or knowledge, and Defendant's failure to fully disclose the extent of his relationship with Plaintiff's competitors. During oral argument on its Motion, Plaintiff argued that Defendant breached his fiduciary duty *each time* he communicated with Plaintiff but failed to reveal his alleged wrongful conduct. Essentially, Plaintiff argues that Defendant had an *affirmative duty* to fully disclose all of his communications and interactions with Plaintiff's competitors. Taking Plaintiff's position to its logical extension, Defendant would have breached his fiduciary duty of full disclosure even if he had not made *any* communications to Texas, simply by not disclosing to Plaintiff the true nature of his activities. Thus, Plaintiff's breach of fiduciary duty claim rests on Defendant's lack of communication with Plaintiff about his "outside" activities. That default in duty, if it occurred, took place in Michigan or other states, not in Texas. Unlike the factual scenario in *Wien Air*,

Plaintiff's allegations are not based on wrongful disclosure to Texas, they are based on the absence of disclosures to Texas. Plaintiff has not established a prima facie case for jurisdiction in Texas over its breach of fiduciary duty claim.[3]

In light of the Court's finding that personal jurisdiction over Defendant does not exist, the Court does not need not reach the question of whether the Northern District of Texas is a proper venue under Fed. R. Civ. P. 12(b)(3).

CONCLUSION

The Court finds that Plaintiff has not met its burden of establishing a prima facie case for personal jurisdiction over Defendant in Texas. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**. This case is dismissed in its entirety without prejudice to re-filing in another jurisdiction.

**SO ORDERED.**

Dated: March 12, 2013.

BARBARA M. G. LYNN
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF TEXAS

---

[3] Defendant argues that, even if he did have sufficient minimum contacts with Texas, the Court cannot assert personal jurisdiction over individuals whose contacts with the forum state arise while acting as corporate officers, unless the corporate entity can be disregarded to reach the individual. Defendant, as an independent contractor, is invoking the "fiduciary shield" doctrine, which encompasses two rules: (1) jurisdiction over an individual cannot be predicated solely on the individual's employer's activities in the forum, and (2) an individual's transaction of business within the state solely as a corporate officer does not create personal jurisdiction over the individual unless the court has a basis to disregard the existence of the corporate entity. *See Stuart v. Spademan*, 772 F.2d 1185, 1196–97 (5th Cir. 1985). During the hearing on November 1, 2012, concluding the Defendant to be an independent contractor, the Court ruled that the fiduciary shield doctrine was inapplicable to this case.